## LONG ET AL. *v.* SCHOWE.

[No. 22,525.     Filed January 9, 1914.]

1. PARTITION.— *Judgment.*— *Persons Concluded.*—The subsequent grantees of the parties to a partition suit, of the lands involved in such suit, are bound by the judgment therein rendered to the same extent as such parties. p. 19.

2. PARTITION.—*Judgment.*—*Collateral Attack.*—A collateral attack on a judgment in partition must fail unless the judgment was a nullity. p. 20.

3. PARTITION.—*Judgment.*—*Validity.*—A judgment in partition is valid unless the court had no jurisdiction of the subject-matter of the action or of the party against whom the partition is sought to be enforced. p. 20.

4. PARTITION.— *Commissioners.*— *Jurisdiction.*— *Establishment of Roadway.*—Commissioners in a partition proceeding may establish

a roadway upon the lands involved, if, in their judgment, it is necessary to the accomplishment of an equitable division and to assure an equitable enjoyment in severalty. p. 20.

5. PARTITION.— *Interlocutory Order.*— *Modification.*—*Rescission.*— An interlocutory finding or order in partition is not conclusive, since it is under the absolute control of the court and may be modified or rescinded, so that notwithstanding an interlocutory finding and order treating a party as having no interest, the final judgment may show that he was interested and that he was a party at the time of its rendition. p. 21.

6. EVIDENCE.—*Presumptions.*—*Judicial Proceedings.*—*Partition.*— In aid of the final judgment in a partition proceeding, it will be assumed, if necessary, that an interlocutory order or finding was so modified as to conform to the final one. p. 21.

7. EVIDENCE.— *Presumptions.*— *Judicial Proceedings.*—*Partition.*— It will be assumed that commissioners in partition, in that part of their report providing for a roadway over the lands involved, simply carried out an agreement of the parties in that respect, where such an agreement was partly evidenced by the deed of one tenant in common to his cotenants, and where, from all the facts involved, as well as from such deed, it fairly appears that all the parties contemplated keeping an open roadway similar to the one, if not the exact one, established by such commissioners. p. 21.

8. PARTITION.—*Interlocutory Order.*—*Report of Commissioners.*— *Approval.*—*Final Judgment.*—All the details of a partition cannot be embodied in the interlocutory order therefor, but must be left to the commissioners subject to the approval of the court, and when such report has been made, it, with the court's confirmation thereof, constitutes the final judgment, binding on the parties as written. p. 22.

9. PARTITION.—*Commissioners.*—*Establishment of Roadway.*—*Parties Interested.*—A road established by the commissioners in partition over the lands involved for the use of the partitioners, and providing that the road should be kept free from gates, "unless all the interested owners" should consent thereto, was not limited to those to whom the land was apportioned in the proceeding, but one who took his share by deed and not through the report of the commissioners, but who was a party to the proceeding and had by deed agreed to keep open that part of the road crossing the land taken as his share, was entitled to have the entire roadway kept open and free from obstruction. p. 22.

From Clark Circuit Court; *Harry C. Montgomery*, Judge.

Action by James P. Long and others against Henry F. Schowe. From a judgment for defendant, the plaintiffs

appeal. (Transferred from the Appellate Court under §1405 Burns 1908, Acts 1901 p. 590.)  *Reversed.*

*E. C. Hughes,* for appellants.
*H. A. Burtt* and *J. E. Taggart,* for appellee.

Cox, J.—Appellants brought this action to establish and confirm a right to the use of a certain roadway over and upon the lands of appellee, to compel appellee to remove fences, gates and other obstructions, and to enjoin appellee from further interference with the free use of the roadway. Issue was formed by general denial of appellants' complaint. There was a trial by the court and a finding against appellants. A motion for a new trial was filed by appellants, the basis of which was the alleged insufficiency of the evidence, in law and fact, to sustain the finding of the court. This motion was overruled and this ruling of the court presents the only error assigned in this court and relied on for reversal.

There is no dispute between counsel for the opposing parties over the material facts. They are established by unconflicting evidence. Their differences lie in the application of the law to those facts. One Martin Adams, at the time of his death, in July, 1889, was the owner of 824.14 acres of land in one body in Washington Township, Clark County. He left as his heirs his widow, Jane H. Adams, and his children, James H. Adams, Clarinda J. Fouts, Caroline Graham, William Adams, Thomas H. Adams, Adeline A. Milner, Charles D. Adams and John Q. Adams. Subsequently the widow of Martin Adams died, and John Q. Adams by conveyance from the other heirs, received his share of his father's estate out of property other than the 824.14 acres. This left the ownership of the 824.14 acres of land in seven of Martin Adams' children as tenants in common. The Westport road, a public highway, runs along the southwest line of the land, except that 153 acres lie on the west side of that road, it separating the 153 acres from the remainder

of the tract. An 80 acre tract owned by Charles D. Adams at and prior to the death of Martin Adams, and the farm of John M. Bower lie along the east boundary line of the 824.14 acres; and on the east line of that 80 acre tract and the John M. Bower farm there is a public highway, designated as the Charlestown and Madison, or New Washington road. On the north side of the 80 acres, owned by Charles D. Adams as aforesaid, and between that and the John M. Bower farm there is a roadway extending from the east line of the 824.14 acre tract eastwardly to the so-called Charlestown and Madison road, and which roadway the said Charles D. Adams used as an outlet from his 90 acre tract, on which he lived, to that public highway.

September 16, 1895, an action, entitled Clarinda J. Fouts *et al.* v. William Adams *et al.,* was filed in the Clark Circuit Court, in which it was sought to partition the 824.14 acres of land among the aforesaid heirs of Martin Adams, deceased, other than John Q. Adams, who had previously received his share of the estate as heretofore stated. To this action Charles D. Adams was made a party. But before the cause was tried the heirs, other than Charles D. Adams, executed a deed to him for 90 acres (a 50 and a 40 acre tract) off of the east side of the 824.14 acres, in partial partition of the same, and in full of his interest in said real estate, which 90 acres so conveyed joined his 80 acre tract on its west line. As a consideration for the last named conveyance, Charles D. Adams and wife conveyed to the other heirs, excepting John Q. Adams, all of his interest in the residue of said real estate, and also agreed to "keep open a roadway as now established" leading from the Martin Adams homestead, which was near the Westport road, across the 90 acre tract conveyed to him, or rather across the 40 acre part of the 90 acres, and over the roadway used by him on the north line of his 80 acres to the Charlestown and Madison road. The road across the 40 acres connecting with the road on the north line of the 80 acres. This deed

did not specifically reserve any right of way over the residue of the tract to the Westport road.   Afterwards, at the November term, 1895, by interlocutory order of the court in the partition cause, commissioners were appointed to divide the 824.14 acres among the other heirs entitled thereto, except the 90 acres voluntarily partitioned to Charles D. Adams as aforesaid.   In the interlocutory order for the division of the land and the appointment of commissioners to make partition the court made the statement that the latter, by reason of the conveyances just above mentioned, "has no further interest in the residue of said real estate." Afterwards the commissioners filed their report, which was approved and confirmed by the court.   In the division so made by the commissioners William Adams received lot No. 1; James H. Adams, lot No. 2; Clarinda J. Fouts, lot No. 3; Adeline A. Milner, lot No. 4; Caroline Graham, lot No. 5; and Thomas H. Adams, lot No. 6.   The commissioners also reserved and set apart a roadway across these lands in the words following: "We have also reserved in the above partition a roadway, beginning at the Westport and Vienna road and the southwest corner of lot No. 6, thence east to the line of Charles D. Adams' 40 acre tract; thence south 60 poles to Charles D. Adams' road to New Washington.   Said road shall be twenty feet wide and for the use of the owners of the above partitioned lands, including Charles D. Adams. It shall be kept open and free from all encumbrances, such as gates, etc., unless all the interested owners shall consent to such.   The land for said road shall be taken from and along the southern boundaries of lots No. 4, 5 and 6, and from the eastern boundaries of lots No. 2 and 3, so far as it shall extend along said boundaries."   The order and judgment of the court approving the report of the commissioners was as follows: "It is therefore considered, ordered and adjudged by the court that the said report be and the same is in all things approved and confirmed; and it is further

ordered and adjudged by the court that the said partition be and the same is made firm and effectual among said parties, and the said parties shall hold, occupy and own in fee simple the tracts and parcels of land in severalty as set off to them respectively.''

Afterwards appellee purchased lots Nos. 4 and 5, owned by Mrs. Milner and Mrs. Graham. There was no way of ingress to or egress from these lots except by the road laid out by the commissioners, as they were inside lots. So appellee and others used the roadway as laid out by the commissioners as aforesaid until about 1908 or 1909, and until appellee also purchased lots Nos. 2, 3 and 6; that is to say, all the interests except William Adams' and Charles D. Adams'. Then, owning all the land between his first purchase and the Westport road, on both sides of a part of the road laid out by the commissioners in the partition proceedings, appellee closed the road. Up to the time the road was closed by appellee it was used by Charles D. Adams, his grantees, including appellants, and by the public. Sometime after the 90 acres were conveyed to Charles D. Adams by the other heirs as aforesaid, that part of the 90 acres on which the roadway connecting with the road laid out by the commissioners is located, and also the 80 acre tract owned by Charles D. Adams, passed by various conveyances from Adams and his grantees into the possession and ownership of the appellants. Each of the conveyances through which the title came to appellants provided that the grantees should have the right to and the use of the roadway laid out by the commissioners. The roadway in dispute extends from the Westport road along the south line of lots Nos. 6, 5 and 4, and on the east line of lots Nos. 3 and 2 of the partition, to the Charles D. Adams road across the 40 acres, thence across that tract to the roadway along the north line of the 80 acre tract formerly owned by Adams and now owned by appellants, and thence to the Charlestown and Madison road.

The following plat, which is in all material respects the same as a plat filed by the commissioners in partition with their report, will aid more readily to give a clear understanding of the facts.

Appellants principally rely on the judgment confirming the report of the commissioners in the partition proceeding to establish their right to the open road, while appellee endeavors to sustain the judgment of the lower court in this case primarily by an assault on the former judgment.

1.   The parties to this cause, as we have seen, are the owners, as subsequent grantees of the parties to the

partition suit, of the lands involved in that action and are bound by the judgment therein rendered to the same extent as the immediate parties to it. In assailing that judgment in this action appellee is engaged in a collateral attack which must fail unless the judgment was a nullity. The parties to that proceeding held the title in common as the heirs of a common ancestor and no questions of adverse title were involved. The pleadings and the judgment show that the object of the proceeding was to separate the common possession of the estate into holdings in severalty. In such case it is said in Freeman, Cotenancy (2d ed.) §528: ''A judgment in partition is, according to a very decided preponderance of the authorities, shielded from collateral assault as fully as any other judgment. It cannot be avoided for error or irregularity, and is valid unless the court had not jurisdiction of the subject-matter of the action or of the party against whom the partition is sought to be enforced.'' In the case before us it is agreed that there was jurisdiction of the subject-matter and the parties. The objection which counsel for appellee set against the judgment in partition is, of course, not against it as a whole for he has acquired the six allotments from those parties who received them through that judgment and he is assuming the right to close the road from the terms of the report of the commissioners which, by the court's unqualified approval and confirmation, became a part of that judgment.

We are informed by counsel for appellants that in the lower court the defense rested on the claim that the commissioners in partition had no authority to establish the roadway in dispute and to make it appurtenant to the share of the common estate which Charles D. Adams had acquired by deed. It is well settled that commissioners, if in their judgment necessary to the accomplishment of an equitable division and to assure an equitable enjoyment in severalty, may create an easement in favor of,

or impose a servitude upon, one or more of the allotments. 30 Cyc. 262; Knapp, Partition 231; Freeman, Cotenancy (2d ed.) §522; *Cheswell* v. *Chapman* (1859), 38 N. H. 14; 75 Am. Dec. 158; *Buckley* v. *Superior Court* (1894), 102 Cal. 6, 36 Pac. 360, 41 Am. St. 135, note 148; *Mount Hope Iron Co.* v. *Deardon* (1886), 140 Mass. 430, 4 N. E. 803; *Eisner* v. *Curiel* (1897), 45 N. Y. Supp. 1010, 20 Misc. 245; *Richardson* v. *Armington* (1872), 10 R. I. 339; *Lister* v. *Lister* (1839), 3 Y. & C. Ex. 540. In this appeal, however, counsel for appellee limit objection to the final judgment to that part of the report of the commissioners which included the parcel which Charles D. Adams took by the deed from his cotenants among those to which the roadway was made appurtenant. It is argued that because, in the interlocutory order for the partition the court had found that Charles D. Adams by reason of the deeds exchanged between him and his cotenants had no further interest in the residue of the real estate, he went out of the case, and that including him among those for whose benefit the road was created, was outside of the issues. If the words used by the court must necessarily bear the intent to find that Charles D. Adams had no further interest in the complete partition of the entire tract, which is not to be conceded, it must be remembered that the interlocutory finding and order was not conclusive. Such a finding and order of the court is under the absolute control of the court and may be modified or rescinded. 30 Cyc. 252, 253; 15 Ency. Pl. and Pr. 810, 811. In aid of the final judgment in the case before us it would have to be assumed, if necessary, that the interlocutory finding and order was so modified as to conform to the final one. The whole record in that proceeding does not show that Charles D. Adams went out of the case but does show that he was in it when the final judgment was rendered. It is but fair to assume that the commissioners in that part of their report relating to the roadway but carried out

an agreement of the parties in that respect which was partly evidenced on the part of Charles D. Adams in his deed to his cotenants. It fairly appears from that deed and from all the facts involved that all the parties to the partition contemplated keeping open a roadway similar to, if not the exact one established by the commissioners. Manifestly all the details of the partition could not be embodied in the interlocutory order. Something must be left to the commissioners subject to the approval of the court. Their report and the confirmation of it by the court make the final judgment. Appellee is bound by the judgment as it was written. Van Fleet, Collat. Attack §787; *Turpin* v. *Dennis* (1891), 139 Ill. 274, 28 N. E. 1065; *Carey* v. *Rae* (1881), 58 Cal. 159. The case of *Turpin* v. *Dennis, supra,* was a suit to enjoin the obstruction of a roadway which had been established by commissioners in partition. The defense was a denial of the authority of the commissioners to lay out and establish the road in the absence of an interlocutory order of the court for them to do so. In the opinion rendered it was said: ''The real question in the case is, whether or not the commissioners, in the partition proceeding, had power to lay out said road, and this question, by their own admission, these defendants are estopped to raise. Whatever title they have is deraigned from that partition proceeding, and the deeds under which they hold describe the lots according to the plat of the lots and the road made by those commissioners. They cannot now be permitted to say that such plat is void. But, at most, there was but error and irregularity in that proceeding and it cannot be attacked collaterally.''

It is also contended by counsel for appellee that a proper construction of the report of the commissioners gives him authority to close the road. The part of the report involved is that part which established the road ''for the use of the owners of the above partitioned lands, including Charles D. Adams. It shall be kept open and

free from all incumbrances, such as gates, etc., unless all the interested owners shall consent to such." It is contended that the words, "interested owners," have relation only to those to whom lots 2, 3, 4, 5 and 6 were apportioned and exclude Charles D. Adams; and that, as appellee had acquired all these tracts, he could, under the terms of the report, close the road. The construction contended for is strained and not permissible. Charles D. Adams was a party to the partition and as such he had by deed agreed to keep that part of the road open across the land taken as his share by deed, and that part of the rest of the road running north and south ran along the western boundary of his land. He was none the less a party to the partition of the 824.14 acre tract because he took his share by deed from the other heirs and not through the report of the commissioners, and was manifestly one of the interested owners.

The judgment is reversed with instructions to sustain appellants' motion for a new trial and for further proceedings in accordance with the law as in this opinion declared.

NOTE.—Reported in 103 N. E. 785. See, also, under (1) 23 Cyc. 1257, 1334; (2) 30 Cyc. 306; (4) 30 Cyc. 263; (6) 30 Cyc. 328; (8) 30 Cyc. 249, 301. As to collateral attack upon partition, see 124 Am. St. 713.