RESIDENTS OF GREEN SPRINGS VALLEY SUBDIVISION, JAMES R. WINSTEAD ET AL. *v.* THE TOWN OF NEWBURGH, INDIANA, A MUNICIPAL CORPORATION ET AL.

[No. 1-775A118. Filed March 31, 1976.]

*Gerling and Moore,* of Evansville, for appellants.

*Dewey & Feulner,* of Newburgh, for appellees.

LYBROOK, J.—This is an appeal by the residents of Green Springs Valley Subdivision *et al.* (hereafter residents) from summary judgment in favor of Town of Newburgh, Indiana, declaring that residents had waived their rights to remonstrate against annexation by Newburgh. The dispositive issue on appeal is whether certain contracts purporting to waive residents' rights to remonstrate were effective.

Since this is an appeal from the granting of summary judgment, the standard of review by this court is limited to certain well defined parameters. In *Pallikan* v. *Mark* (1975), 163 Ind. App. 178, 322 N.E.2d 398, this court stated that summary judgment properly lies only where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits and testimony, if any, reveal that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. See, Ind. Rules of Procedure, Trial Rule 56. Moreover, in considering a motion for summary judgment (a) the facts set forth by the opponents' affidavits must be taken as true, (b) all depositions, admissions and other

factual matters must be construed liberally in favor of the opponent of the motion, and (c) any doubt as to the existence of an issue of material fact must be resolved against the proponent of the motion. *Podgorny* v. *Great Central Ins. Co.* (1974), 160 Ind. App. 244, 311 N.E.2d 640.

With these standards of review in mind, our examination of the record reveals the following facts. On or about April 7, 1969, Green Spring Corporation owned certain real estate in Warrick County, Indiana. On that date, Green Spring entered a contract with Jebco, Inc., whereby Jebco agreed to construct a sewer system to service the land owned by Green Spring which was, at that time, in the process of being subdivided and sold. Among other things, the contract provided for waiver of the right to remonstrate by subsequent owners of the land who tapped into the Jebco sewers:

> "The said party of the second part (Green Spring) further covenants and agrees to require all property owners who subsequently tap or connect to the sewer . . . to release any right to remonstrate against any pending or future annexations of said real estate to the Town of Newburgh. Said release of right shall be binding upon the second party hereto and upon all successors in title . . ."

Although appellee Town of Newburgh alleges that this contract between Green Spring and Jebco was duly recorded in the office of the recorder of Warrick County, the record does not so reveal.

Thereafter, on April 8, 1969, Jebco, through authority allegedly granted by Green Spring, entered a contract with Town of Newburgh providing that the Jebco sewers servicing Green Spring's property were to be connected to the existing Newburgh sewer system. The Jebco/Newburgh contract also provided:

> "The said contractor [Jebco] further covenants and agrees to require all property owners who subsequently tap or connect to the sewer described herein . . . to release any right to remonstrate against pending or further annexations of said real estate to the town of Newburgh. Said release of right shall be binding upon all successors in title . . ."

The Jebco/Newburgh contract was presented and accepted for recordation by the Warrick County Recorder on June 27, 1969. Thereafter, no further proceedings were had between any of the above mentioned parties until July 24, 1973, when Newburgh by and through its appropriate officers attempted by special ordinance to annex to the town of Newburgh the area serviced by the Jebco sewers. The following day, July 25, 1973, Newburgh filed an action in the Warrick Circuit Court seeking to restrain the residents of the newly annexed area from signing petitions to remonstrate, soliciting funds for legal fees, and attending meetings aimed at slowing or impeding the annexation process. In response, residents, on October 9, 1973, filed a complaint in the form of a remonstrance and appeal from the annexation. The two cases were then consolidated for purposes of expediting their resolution.

After various motions, pleadings, and affidavits, the trial court, on February 28, 1975, sustained Newburgh's motion for summary judgment and struck from the remonstrance action the names of all persons being serviced by the Jebco sewers. Since the remaining remonstrators were too few in both numbers and ownership under the guidelines of IC 1971, 18-5-10-24 (Burns Code Ed.) to successfully sustain a remonstrance, judgment was entered in favor of Newburgh in both of the consolidated cases. The basis of the trial court's action was the belief that the two contracts discussed above effectively waived and released any rights of residents to remonstrate from the annexation. It is this conclusion which residents now challenge on appeal.

## DISCUSSION

Resolution of the dispute herein begins with an examination of *Doan et al.* v. *City of Fort Wayne* (1969), 253 Ind. 131, 252 N.E.2d 415. Therein, the Supreme Court recognized that:

"The right to remonstrate is an extremely important one . . . created . . . to give affected landowners a legal

means to challenge annexation if they 'deem themselves aggrieved or injuriously affected.' "

In *Doan* the court analyzed the situations under which the right to remonstrate from pending or future annexations may be validly waived. The court concluded that:

". . . an owner of land may not validly waive his right to remonstrate against *future* annexations, unless ■ expressly authorized to do so by statute." (Original emphasis.)

Moreover, the *Doan* court recognized that waiver of the right to remonstrate against future annexations is expressly authorized by statute in situations like the case at bar:

"In contracts with owners of real estate for the construction of sewage facilities, the statute expressly ■ provides for a waiver of the right to remonstrate:

'. . . The contract *shall* include as part of the consideration running to the city or town, the release of the right of the owners party thereto and their successors in title to remonstrate against *pending* or *future* annexations to the city or town of the area served by the sewers and facilities, and any person tapping into or conecting (sic) to the sewers and facilities contracted for, shall be deemed to thereby waive their rights to remonstrate against the annexation of the area served by the sewers and facilities.' § 48-3963, *supra*. (our emphasis.)"

The statute to which the *Doan* court referred is IC 1971, 19-2-7-16 (Burns Code Ed.). It provides:

"19-2-7-16 [48-3963]. Contracts with owners of real estate for the construction of sewage facilities.—In addition to any powers conferred upon any board of public works or board of public works and safety, or board of town trustees, by the provisions of this act [19-2-7-1—19-2-7-23], each may contract with owners of real estate for the construction of storm, sanitary or combination sewers, pumping stations or disposal plants within the city or town or within four [4] miles from its corporate limits in order to provide service for the area in which the real estate of the owners is located, and to provide, for a period of not to exceed fifteen [15] years, for the reimbursement of the owners and their assigns by any owner of real estate who did not

contribute to the original cost of the sewers, pumping stations or disposal plants, and who subsequently taps into or uses the same or deposits sewage or storm waters therein, of a fair pro rata share of the cost of the construction of the sewers and facilities, including not only direct users but also users on any lateral sewers connecting thereto, subject to such reasonable rules and regulations as the board may adopt and pursuant to contract, notwithstanding the provisions of any other law relating to the functions of local governmental units: Provided, That the provisions of the contract shall not be effective as to any owner of real estate not a party thereto unless the contract shall have been recorded in the office of the recorder of the county in which the real estate of the owner is located prior to the time the owner taps into or connects to the sewers and facilities. The power of the board to so contract shall also apply to sewers and facilities in process of construction or which have not been finally approved or accepted for full maintenance and operation by the city or town upon the effective date of this act, January 1, 1968.

"The contract shall include as part of the consideration running to the city or town, the release of the right of the owners party thereto and their successors in title to remonstrate against pending or future annexations to the city or town of the area served by the sewers and facilities, and any person tapping into or connecting to the sewers and facilities contracted for, shall be deemed to thereby waive their rights to remonstrate against the annexation of the area served by the sewers and facilities."

Newburgh argues that pursuant to this statute, residents must be deemed to have waived their rights to remonstrate since it is undisputed that they tapped into or connected to the sewers in question. The basis of Newburgh's argument comes from the following clause of the statute: ". . . any person tapping into or connecting to the sewers and facilities contracted for, shall be deemed to thereby waive their rights to remonstrate against the annexation of the area served by the sewers and facilities."

Drawing upon this language, Newburgh submits that even if residents were not parties to the contract, they nevertheless lose their statutory right to remonstrate by tapping into or connecting to the sewers. In other words, Newburgh main-

tains that by accepting benefits under the contract, residents are bound by the statute, and have waived their right to remonstrate.

In response, residents maintain that the statute provides that the right to remonstrate is only waived where the contract is entered by a municipal corporation and owners of real estate. Residents point out that at no time did Jebco own any of the affected real estate. They therefore argue that the contract between Jebco and Newburgh has no force or effect upon them.

To that argument Newburgh responds by indicating that the statute provides that the provisions of waiver are effective against owners of real estate not party to the contract if the contract is duly recorded, which Newburgh alleges was done. That provision in the statute reads:

> "Provided, That the provisions of the contract shall not be effective as to any owner of real estate not a party thereto, unless the contract shall have been recorded in the office of the recorder of the county in which the real estate of the owner is located prior to the time the owner taps into or connects to the sewers and facilities."

In our opinion, it is clear that unless he is a party to the contract to provide sewer service, a landowner's right to remonstrate against annexation cannot be validly waived unless the contract purporting to waive that right is duly recorded. The reasons for the requirement of recordation are obvious. An owner not privy to the contract for sewer services generally has no actual notice of the remonstrance waiver contained therein. This is particularly true of one who becomes an owner after execution of the contract. Thus, the purpose of recordation is to charge the subsequent landowners with constructive notice of the waiver of the right to remonstrate. It is apparent therefore that unless the contract for sewer services is recorded in such a manner as to impart constructive notice to subsequent landowners or to landowners not a party to the contract, the

spirit of the statute and the reasons for requiring recordation of the contract are violated. Unless charged with constructive notice or with actual notice of the waiver of the right to remonstrate, a subsequent landowner cannot be deemed to have released or waived that right. To reach a contrary result would be to render the statute and *Doan, supra,* of no force or effect.

Thus, a material question is whether the contract between Jebco and Newburgh was recorded in such a manner as to impart subsequent landowners (residents herein) with constructive knowledge of the release and waiver of the right to remonstrate. The uncontroverted evidence is that the Jebco/Newburgh contract was recorded. However, mere recordation is not sufficient. It must be established that the contract containing the waiver provisions was recorded within the chain of title of subsequent purchasers, for it is well settled that a purchaser is bound by any instrument of record found within his chain of title. *Wiseman* v. *Hutchinson* (1863), 20 Ind. 40; *Croskey* v. *Chapman* (1866), 26 Ind. 333; *Colman* v. *Watson* (1876), 54 Ind. 65; and *Wagner* v. *Winter* (1890), 122 Ind. 57, 23 N.E. 754. Conversely, it may be stated that no constructive notice of the contents of a document outside his chain of title is imparted to a purchaser of real estate.

Herein, an affidavit by one Daniel J. McGinn, an attorney duly licensed under the laws of the State of Indiana, discloses that a search of the records of the Warrick County Recorder fails to reveal the Jebco/Newburgh contract within the chain of title of residents. On the other hand, an affidavit of one James Biggerstaff states that the Jebco/Newburgh contract ". . . would normally be referred to in title searches pertaining to any lots located in Green Springs Valley Subdivision . . .".

Thus, there exists a material issue of fact, that being whether the Jebco/Newburgh contract was recorded in such

a manner as to charge subsequent landowners with constructive notice of its contents. If this inquiry is answered affirmatively, then residents must be deemed to have waived their rights to remonstrate. Otherwise, the purported waiver is ineffective absent actual knowledge. In either case, it is clear that this case was not properly disposed of by summary judgment. *Pallikan* v. *Mark, supra; Podgorny* v. *Great Central Ins. Co., supra.*

The judgment below must therefore be and is hereby reversed. The cause is remanded with instructions to overrule Newburgh's motion for summary judgment and for further proceedings not inconsistent with the views herein expressed.

Judgment reversed and remanded with instructions.

Robertson, C.J. and Lowdermilk, J., concur.

NOTE.—Reported at 344 N.E.2d 312.