David N. ROGERS and Barry A. Schnakenburg, et al., Plaintiffs-Appellants,

v.

CITY OF EVANSVILLE, Indiana, Defendant-Appellee.

No. 1–781A224.

Court of Appeals of Indiana, First District.

July 27, 1982.

Rehearing Denied Sept. 13, 1982.

James E. Fields, Fields & Adin, P. C., Evansville, for plaintiffs-appellants.

David A. Bunner, Dept. of Law, Evansville, for defendant-appellee.

NEAL, Judge.

## STATEMENT OF THE CASE

David N. Rogers and Barry A. Schnakenburg, et al. (Remonstrators) appeal an adverse judgment in the Vanderburgh Circuit Court denying their remonstrance to an annexation ordinance enacted by the City of Evansville (City). We reverse.

## STATEMENT OF THE FACTS

The original annexation ordinance, G77–38, was enacted by the City Council of Evansville on December 15, 1977, for the purpose of annexing a certain territory contiguous to Evansville. Thereafter, on February 27, 1978, in Cause No. 5739, Remonstrators filed their remonstrance in the Vanderburgh Circuit Court. The City filed an objection to the validity of certain signatures appearing on the remonstrance because of waivers of right to remonstrate which appear in certain sewer contracts. After a hearing on the issues raised by the objection, the trial court, on February 29, 1980, entered its findings of fact, conclusions of law, and judgment. The trial court found that the remonstrance bore the signatures of more than 51 percent of the landowners in the area; however, it also found that the ordinance was void, illegal and unconstitutional because of special tax exemptions awarded the Whirlpool Corporation which had the effect of denying the other landowners due process and equal protection of the law.

Thereafter, on April 11, 1980, City filed its motion to correct errors which attacked the trial court's ruling on the validity of the signatures on the remonstrance because of the waivers contained in the sewer contracts and the court's ruling that the ordinance was void. On April 25, 1980, the court sustained the City's motion to correct errors. In its ruling, the court found that the City agreed to enter into new negotiations with the remonstrators which included amending the annexation ordinance to include a smaller tract of land and offering the same method of payment of tax to all persons in the area to be annexed. The court further found that if the annexation ordinance was not amended as set out above, the same evidence would be readmitted without objection, and the same judgment that was entered on February 29, 1980, would be reinstated. The trial court concluded with the following conclusion of law:

"1. The Court hereby *grants* the motion to correct errors filed by the City of Evansville. *Strikes* the final judgment heretofore entered on February 29, 1980, and *Retains* jurisdiction over the parties and the subject matter herein."

The record reflects no objection by Remonstrators to the ruling on the motion to correct errors, and no appeal was ever taken from it.

On August 25, 1980, the City Council of Evansville enacted Ordinance G80–39 which, by its terms, specifically amended Ordinance G77–38 to include a substantially smaller area than did the original ordinance. The area encompassed by G77–38 included 2,424 landowners while the area encompassed by G80–39 included only 1,178.

On October 22, 1980, Remonstrators filed their consolidated motion which requested alternately the trial court to:

"1. Reinstate the February 29, 1980, judgment because the City did not amend the ordinance as agreed; City did not negotiate with Remonstrators, and the ordinance included an area which Council had earlier represented would not be included.

2. Moved the Court for a trial on the merits of the original petition because the February 28, 1980, judgment found the remonstrance sufficient as regard to the number of valid signatures; that Remonstrators have a right to have the matter heard on the merits to know whether they will be protected by the two year statute.

3. Requested that if the trial court did not reinstate the February 29, 1980, ruling, or assign the original remonstrators for trial, then Remonstrators pray for leave to file a supplemental amended remonstrance complaint addressing Ordinance No. G80–39."

The entire consolidated motion was denied by the trial court.

Thereupon, on November 5, 1980, the Remonstrators filed a new Remonstrance containing new signatures in Cause No. 7743, addressed to Ordinance G80–39. On November 7, 1980, the trial court consolidated Cause Nos. 5739 and 7743 on its own motion without objection by Remonstrators. The trial court further, upon motion of Remonstrators, made a part of the record all briefs, papers, and rulings made in Cause No. 5739. On January 12, 1981, City filed a motion to dismiss addressed to the Remonstrance in Cause No. 7743, which raised the questions: (1) that the remonstrance did not contain signatures of a majority of the owners of the land, and (2) the remonstrance did not contain a complete copy of the ordinance, namely, the physical plan. Without objection by Remonstrators (actually by agreement) the trial court set the motion to dismiss for hearing, and, on February 2, 1981, sustained the motion to dismiss on the basis that, after excluding a number of signers who were subject to the waiver provisions contained in sewer contracts, the Remonstrators did not contain the signatures of more than 50 percent of the landowners in the area sought to be annexed.

## ISSUES

I. Did the trial court commit error on April 25, 1980, in granting the Motion to Correct Errors of the City of Evansville, striking the final judgment entered on February 29, 1980, ordering the City to amend its annexation ordinance, and retaining jurisdiction of the parties and subject matter?

II. Did the trial court commit error on October 29, 1980, in denying the Plaintiffs-Appellants' Consolidated Motion to Reinstate, or Assign for Trial, or Request for Leave to File a Supplemental Amended Remonstrance Complaint to the City's amended annexation ordinance?

III. Did the trial court commit error on February 2, 1981, in its Judgment Entry in the manner and method by which it determined the insufficiency of the remonstrance and by further ordering the City of Evansville to take certain action under certain circumstances in the implementation of the annexation ordinance?

## DISCUSSION AND DECISION

*Issue I and II. Prior judgment*

As relevant here, Ind.Code 18–5–10–24 provides that a remonstrance to an annexation ordinance requires the signatures of a majority of the owners of land in the area to be annexed, or signatures by the owners of more than 75 percent in assessed valuation. Upon receipt of the remonstrance the court is required to determine whether it bears the necessary signatures and complies with Ind.Code 18–5–10–24. Upon a determination that the remonstrance is sufficient, he shall fix a time for hearing on the remonstrance within 60 days. If the court finds, in accordance with the three factors in Ind.Code 18–5–10–25, that (a) the population is of sufficient density, (b) appropri-

ate contiguous boundaries of the City and the property to be annexed exist, and (c) a sufficient fiscal plan exists, it shall order the annexation to take place. If the evidence does not establish the factors (a), (b) and (c) above, the trial court shall sustain the remonstrance. Ind.Code 18–5–10–26 provides for a two year moratorium after a judgment adverse to annexation.

We view the judgment entered on February 29, 1980, as a determination of the sufficiency of the petition, and we view Issue I and those portions of Issue II concerning the motion to reinstate the February 29, 1980 judgment, and the motion to assign for trial, as relating to that judgment. The granting of a motion to correct errors which struck that judgment from the record had the effect of returning the case to the position it occupied immediately prior to the hearing, that is, a pending undecided case. Remonstrators could have appealed the ruling granting a motion to correct errors. *P–M Gas & Wash Company, Inc. v. Smith,* (1978) 268 Ind. 297, 375 N.E.2d 592. They did not, and any error occurring at that point in the record was waived. Ind. Rules of Procedure, Appellate Rule 3(B); *Richards v. Franklin Bank & Trust Company,* (1978) Ind.App., 381 N.E.2d 115. Therefore, these issues are no longer available to Remonstrators.

However, the petition for leave to file a Supplemental Amended Remonstrance Complaint to the amended annexation Ordinance G80–39 is not thus disposed of. Two cases exist which discuss the problem in the instant case: *Vesenmeir v. City of Aurora,* (1953) 232 Ind. 628, 115 N.E.2d 734, and *King v. City of Bloomington,* (1959) 239 Ind. 548, 159 N.E.2d 563. In *Vesenmeir,* the city council enacted an ordinance which repealed a previous ordinance which was being challenged on appeal and was in court by way of a remonstrance; the previous ordinance reduced the territory to be annexed. Yet another ordinance was passed while the appeal was pending which corrected the description. Remonstrances were filed to the subsequent ordinances. The City of Aurora filed a motion to dismiss

the remonstrance to the first ordinance as being moot, which was sustained. On appeal, it was argued that they were entitled to a judgment that the annexation should not take place since it would have the effect of prohibiting further annexation proceedings for a period of two years. The Supreme Court, in affirming, said that the annexation statute contained no restriction on the power of a municipality to repeal or modify an annexation ordinance which has not yet become effective, and under which the status of the territory involved has remained unchanged. The Supreme Court further held that the repeal or modification could be enacted by the City while the remonstrance was pending.

In *King,* the Supreme Court limited the application of *Vesenmeir.* There, after remonstrators had gotten 2,478 signatures, spent considerable money, and filed the remonstrance, the city repealed the ordinance, and attempted to cause the remonstrance to be dismissed. Thereafter, new and similar annexation ordinances were reenacted. Remonstrators filed a petition for leave to file a supplemental complaint for injunctive relief on the basis that the conduct of the city was vexatious, harassing, and oppressive. The Supreme Court posed the question as follows:

> "The main question presented here is whether or not, during an annexation appeal to a trial court . . . the City, for the sole purpose of frustrating future remonstrances, can repeal its annexation ordinance and thereby require a dismissal of the appeal and then, having accomplished its purpose, shortly thereafter reenact the same or substantially similar ordinance of annexation, compelling those opposing the annexation ordinance to go out again at great expense and work and prepare a second and subsequent remonstrance in order to secure a hearing on the merits of annexation in the trial court."

239 Ind. at 559, 159 N.E.2d 563.

The Court, stressing the hardship and burden on remonstrators in effort and expense, stated that

"The statute intended to avoid such unfair practice by providing that if the annexation proceeding was defeated once, it could not be renewed for a period of two years. If such a provision has any meaning, it would include any attempt to cover substantially the same territory a second time after it has been defeated the first time."

239 Ind. at 559–560, 159 N.E.2d 563. The Court noted that annexation was a legislative function subject to judicial review. The judicial review is limited to the determination of whether the Council exceeded its limited, delegated authority, or attempted to evade or circumvent the plain intent and meaning of the statute. It distinguished *Vesenmeir* because (1) that case involved no issue of hardship on the remonstrators since then the statute permitted a remonstrance to be filed by one person, not 51 percent as now required, and (2) there was no allegation or issue in any pleading that the repeal and reenactment of the ordinance was harassing, vexatious, and oppressive. The Court said, again stressing the burden and expense,

"In the light of such changed legislation, we question the applicability of the language [in Vesenmeir] which states the City should have the power to repeal an annexation ordinance at any time (even though an appeal is pending therefrom in a trial court) and reenact substantially the same ordinance thereafter . . . .

\* \* \* \* \* \*

With the immense burden and expense cast upon the remonstrators by the recent amendment to the Annexation Act, it is much wiser and more prudent that the City be required to exercise more care in the drafting of its ordinances in the first instance or suffer the consequences of its own errors and mistakes, rather than visit them upon those innocent of such errors."

239 Ind. at 562–3, 159 N.E.2d 563. The Court held that the issue of the first remonstrance was not moot, and the remonstrators were entitled to protection as requested in the supplemental complaint.

The issues tendered by the objections to the motion to dismiss, and the supplemental complaint were issues of fact as to (1) whether the City created a hardship by harassment and vexatious proceedings; (2) whether or not the successive ordinances for annexation are the same or substantially the same, and (3) whether or not the primary determinants exist for annexation. The Court stated:

"We point out the supplemental complaint asks, among other relief, that an injunction issue against the enactment and enforcement of the subsequent annexations, including Ordinances No. 13 and No. 17 for a period of two years.

Since the required number of remonstrances under the statute does not end or kill the annexation proceeding, but merely entitles such opposition to a hearing on the merits of the annexation in accordance with the determinants set up in the statute, it would not be proper for an injunction to be granted unless there was a finding adverse to the City on that issue also.

The appellants are entitled to a hearing on the merits of their objections to the motion to dismiss and to the issues joined on the supplemental complaint. If the appellants are sustained therein, then the court should proceed to hear the statutory appeal on the merits of the determinants, as set forth in the Annexation Act, for the purpose of determining whether or not an injunction should issue against any further annexation proceedings for such territory during a two-year period. If, however, the issues on the motion to dismiss and the supplemental complaint or on the existence of the statutory determinants are decided adversely to the appellants and in favor of the City, then the City may proceed with its annexation program by prosecuting and carrying out the enactment of Ordinance No. 17 or any other validly enacted ordinance, subject, however, to statutory review."

239 Ind. 566–7, 159 N.E.2d 563.

█ We interpret *King* as holding the mere fact that the prior ordinance was re-

pealed while the remonstrance to it was pending in the Court, and another ordinance enacted, did not, of and to itself, give Remonstrators a right to injunctive relief against enacting and enforcing a subsequent ordinance. The court must first find that such conduct on the part of the City was vexatious, harassing or oppressive. If such exists, the court must then determine the merits of the appeal to the first ordinance. If merit is found, the court should then issue its injunction against the city prohibiting further annexation proceedings for two years. If the court determines that the conduct of a city was not vexatious, harassing or oppressive, *or* that the first ordinance was valid, then the city may proceed with its subsequent annexation program.

In the case at bar, Remonstrators concede, at page 19 and page 46 of their brief, they are not contending that the conduct of the City was vexatious, harassing, or oppressive. The October 22, 1980, consolidated petition for permission to file an amended remonstrance did not pray for injunctive relief, as was done in *King*, but merely prayed for permission to file the amended remonstrance without new signatures. *See Matter of the City of Fort Wayne*, (1978) Ind.App., 381 N.E.2d 1093, (where the court noted that the first remonstrance to the first ordinance was moot). Upon denial of the petition on October 29, 1980, the Remonstrators, on November 5, 1980, filed a new remonstrance, with new signatures. The trial court even permitted 72 signatures of the first remonstrance which were not on the new remonstrance to be counted. No further objections were made by the Remonstrators to any further action by the court after the denial of the consolidated petition.

■ We are of the opinion that the Remonstrators have not raised, and have not presented, any of the issues as were presented in *King*. The trial court ultimately granted a full hearing on the merits on the validity of the signatures and the sufficiency of the remonstrance to the amended annexation ordinance. Therefore, Remonstrators have not been prejudiced.

*Issue III. Waiver*

Pursuant to motion by City, the trial court, in its February 2, 1981, judgment, specially found that the number of landowners in the area to be annexed was 1,178, and the number of valid signers of the remonstrance was 697, more than a majority as required by Ind.Code 18–5–10–24. The court then found that 138 of the remonstrators "had in their abstract of title at the time of purchase a sewer agreement whereby they waived their right to remonstrate against annexation." Thus, the court concluded that there was only 559 valid remonstrators, short of a majority necessary of 590, and the remonstrance thereby failed. The court thereupon sustained the City's motion to dismiss. In its findings of fact and judgment, the trial court *did not* find (1) that the sewer contract was recorded, or (2) that the 138 signers were parties to the sewer contract, or (3) that the sewer contract was recorded in the remonstrator's chain of title, or (4) that the signers had actual notice of the existence of the waiver agreement contained in the sewer agreement.

■ Sewer agreements containing waiver of a right to remonstrate to annexation ordinances are provided for in Ind.Code 19–2–7–16, which reads, in part, as follows:

"In addition to any powers conferred upon any board of public works ... each may contract with owners of real estate for the construction of ... sewers ... within four (4) miles from its corporate limits in order to provide service for the area in which the real estate of the owners is located ....

\* \* \* \* \* \*

The contract shall include as part of the consideration running to the city or town, the release of the right of the owners party thereto and their successors in title to remonstrate against pending or future annexations to the city or town of the area served by the sewers and facilities, and any person tapping into or con-

necting to the sewers and facilities contracted for, shall be deemed to thereby waive their rights to remonstrate against the annexation of the area served by the sewers and facilities."

The section further contains the following proviso:

"Provided, That the provisions of the contract shall not be effective as to any owner of real estate not a party thereto unless the contract shall have been recorded in the office of the recorder of the county in which the real estate of the owner is located prior to the time the owner taps into or connects to the sewers and facilities."

However, such waivers are valid only if expressly authorized by statute. *Doan v. City of Fort Wayne*, (1969) 253 Ind. 131, 252 N.E.2d 415. In the case of *Residents of Green Springs Valley Subdivision v. Town of Newburgh*, (1976) 168 Ind.App. 621, 344 N.E.2d 312, the court, following *Doan*, said:

"In our opinion, it is clear that unless he is a party to the contract to provide sewer service, a landowner's right to remonstrate against annexation cannot be validly waived unless the contract purporting to waive that right is duly recorded. The reasons for the requirement of recordation are obvious. An owner not privy to the contract for sewer services generally has no actual notice of the remonstrance waiver contained therein. This is particularly true of one who becomes an owner after execution of the contract. Thus, the purpose of recordation is to charge the subsequent landowners with constructive notice of the waiver of the right to remonstrate. It is apparent therefore that unless the contract for sewer services is recorded in such a manner as to impart constructive notice to subsequent landowners or to landowners not a party to the contract, the spirit of the statute and the reasons for requiring recordation of the contract are violated. Unless charged with constructive notice or with actual notice of the waiver of the right to remonstrate, a subsequent landowner cannot be deemed to have released or waived that right. To reach a contrary result would be to render the statute and *Doan, supra,* of no force or effect.

Thus, a material question is whether the contract between Jebco and Newburgh was recorded in such a manner as to impart subsequent landowners (residents herein) with constructive knowledge of the release and waiver of the right to remonstrate. The uncontroverted evidence is that the Jebco/Newburgh contract was recorded. However, mere recordation is not sufficient. It must be established that the contract containing the waiver provisions was recorded within the chain of title of subsequent purchasers, for it is well settled that a purchaser is bound by any instrument of record found within his chain of title. *Wiseman v. Hutchinson* (1863), 20 Ind. 40; *Croskey v. Chapman* (1866), 26 Ind. 333; *Colman v. Watson* (1876), 54 Ind. 65; and *Wagner v. Winter* (1890), 122 Ind. 57, 23 N.E. 754. Conversely, it may be stated that no constructive notice of the contents of a document outside his chain of title is imparted to a purchaser of real estate."

168 Ind.App. at 628–9, 344 N.E.2d 312.

■ In considering the sufficiency of the findings of fact and conclusions of law to sustain a decision, we recognize the general rule that this court must accept ultimate facts as stated by the trial court if there is evidence to sustain them, and that where the facts necessary to sustain the issues are not found by the trial court and the findings are silent as to such facts, they are regarded as not proved. Under such circumstances the law, in effect, implies negative findings as to such issues against the party having the burden of their proof. *Miller v. Ortman,* (1956) 235 Ind. 641, 136 N.E.2d 17.

■ *Newburgh, supra,* clearly requires that before a waiver provision contained in a sewer contract is binding (1) the remonstrator-landowner must have been a party to the contract, or (2) the contract must have been duly entered into and recorded

by his predecessor in title in the remonstrator-owner's chain of title, or (3) the remonstrator-owner had actual notice. The waiver issue was advanced by the City and they bore the burden of proof. The findings are clearly deficient as to requirements (1) and (2), and must be construed as not proved. Such is particularly significant in view of the evidence and argument advanced by Remonstrators that sewer contracts containing the waiver provisions were executed and recorded by the developers after most of the lots were sold, or were otherwise not recorded in the chain of title.

▮ The trial court further made no finding that the 138 remonstrators, or any one of them, had actual notice of the waiver provisions in the sewer contracts. Can the finding that the Remonstrators "had in their abstract of title at the time of purchase a sewer agreement whereby they waived their right to remonstrate against annexation" be construed as a finding of actual notice? Such a finding could mean many things. Actual notice has been divided into two classes, express and implied. Implied notice is inferred from the fact that the person charged has means of knowledge which he did not use; it is generally regarded as differing from constructive notice, although the effect is the same. *Mishawaka, St. Joseph Loan & Trust Company v. Neu*, (1935) 209 Ind. 433, 196 N.E. 85; 22 I.L.E. *Notice* § 1. However, actual knowledge is not synonymous with actual notice. *Kirkham v. Moore*, (1903) 30 Ind.App. 549, 65 N.E. 1042. It has been said that when one has sufficient information to reasonably lead him to a fact he must be deemed conversant with it. *Huffman v. Foreman*, (1975) 163 Ind.App. 263, 323 N.E.2d 651. The latest pronouncement was contained in *Wienke v. Lynch*, (1980) Ind.App., 407 N.E.2d 280.

"The law recognizes two kinds of notice, constructive and actual. Constructive notice is a legal inference from established facts. Deeds and mortgages, when properly acknowledged and placed on record as required by statute, are constructive notice of their existence, ' "and

charge a subsequent grantee with notice of all that is shown by the record." ' (Citation omitted.) *Willard v. Bringolf*, (1936) 103 Ind.App. 16, 29, 5 N.E.2d 315, 321. Notice is actual when it has been directly and personally given to the person to be notified. Actual notice is generally extended to embrace ' "all degrees and grades of evidence from the most directive and positive proof to the slightest circumstances from which a court or jury would be justified in inferring notice." ' (Citation omitted.) *Willard, supra*, 103 Ind.App. at 29, 5 N.E.2d at 321." 407 N.E.2d at 286.

▮ Notice is an ultimate fact and should be found in those terms. *Kirkham, supra*. Actual notice, in so many words, was not found to exist in the case at bar. We are of the opinion the mere unexplained existence of a contract in the abstract, without more, is not necessarily actual notice. An abstract is a private, not official, document and a person is not charged with constructive knowledge of its contents. *See* 13 I.L.E. *Evidence* § 159. The City does not so argue. We are familiar with the fact that real estate is bought and sold through realtors, lawyers, and financial institutions. The abstract may never get into the hands of the owner at closing. If it did he may not understand it. We are dealing with a waiver clause buried in a sewer contract. The abstract may, and usually does, go from the seller to the abstractor for a continuance, who would then deliver it to the financial institution's attorney for examination. Thereafter, it would be placed in the vault of the financial institution until the mortgage was paid. Occasionally, a purchaser may have a private opinion from his own lawyer. We agree with *Doan, supra*, where our Supreme Court stated, "The right to remonstrate is an extremely important one," and it refused to sanction a prior waiver of the right to remonstrate absent statutory authorization. Therefore, no findings exist which amount to actual notice.

Another and even more compelling reason exists as to why the findings on actual

notice are deficient. Coupled with the fact the court made no finding that the sewer contract was recorded, or recorded in the chain of title, the Remonstrators demonstrate evidence in their brief that relevant sewer contracts were entered into and recorded by the developers of the affected subdivision, but *after* most of the lots were first sold.

 Recording acts are designed to protect subsequent purchasers and incumbrances from a common grantor. They impart constructive notice only to those who claim through or under the grantor in question. *Piel v. DeWitt*, (1976) 170 Ind.App. 63, 351 N.E.2d 48; *Howard D. Johnson Company v. Parkside Development Corporation*, (1976) 169 Ind.App. 379, 348 N.E.2d 656. However, an otherwise valid instrument which is not entitled to be recorded, or is improperly recorded, or recorded out of the chain of title, does not operate as constructive notice, but may bind persons having actual notice.

 The remaining question is whether the developer may bind the title to the lots, or waive their owners' right to remonstrate *after* he has parted with title. We perceive it to be elementary that a prior owner of real estate cannot generally bind a title by any act of his *after* he has conveyed it. Also, recording an instrument after a party has divested himself of title is a recording out of the chain of title. *See* 66 Am.Jur.2d *Records and Recording* § 106. *Doan, supra*, requires a statutory authorization to impart validity to a prior waiver agreement. That statute, Ind.Code 19–2–7–16, upon which the validity of these waiver agreements are dependent, provides that the board of works of the cities and towns may contract with the owners of real estate for the construction of sewers, and that each contract shall include the waiver provision. The contract is not effective as to any owner of real estate not a party thereto unless the contract shall have been recorded prior to the time the owner taps into or connects to the sewer or facilities. *Newburgh* adds that the recording shall be in the chain of title.

 We conclude that these authorities evince a scheme that in order to have a binding contract on all lot owners, the developer must enter into and record the sewer contract prior to the sale of lots. Then, and only then are subsequent owners bound by the developer's agreement. Of course, the subsequent owners could enter into separate valid agreements later, while they were the owner of the lot and prior to the sewer connection, and thus be bound. Under the circumstances where the sewer agreement was entered into and recorded after the sale, it would make no difference whether there was notice, actual or constructive, for the developer may not bind subsequent owners after he has divested himself of title. The findings are therefore deficient to conclude a valid and enforceable waiver of the right to remonstrate exists.

For the reasons herein set forth, this cause is reversed and the trial court is ordered to overrule the City's motion to dismiss.

Judgment reversed.

RATLIFF, P. J., and ROBERTSON, J., concur.