**Robert J. HENSLER and Carol Sue Hensler, husband and wife, and Carl W. Risk, and Diana Risk, husband and wife, Appellants–Defendants,**

v.

**Charles BROOKS, Louise Health, and Alma Smith, as The Town Board of Brooksburg, Indiana, Appellees–Plaintiffs.**

No. 39A01–9701–CV–6.

Court of Appeals of Indiana.

Aug. 29, 1997.

William Edward Jenner, Jenner & Auxier, Madison, for Appellants–Defendants.

Robert L. Barlow, II, Kemper & Barlow, Madison, for Appellees–Plaintiffs.

**OPINION**

BAKER, Judge.

Appellants-defendants Robert J. and Carol Sue Hensler and Carl W. and Diana Risk (Henslers) appeal the trial court's determination that they had obstructed a public right-of-way in Brooksburg, Indiana. Specifically, the Henslers contend that the evidence did not support the trial court's judgment.

### FACTS [1]

In 1974, the Henslers purchased property in Brooksburg, Indiana. Their land was bordered on the south by the Ohio River, on the east by the Indian–Kentuck Creek, and on the north by the platted lots of the town of Brooksburg.

In March of 1993, after the Henslers placed several trailers on the property, appellees-plaintiffs Charles Brooks, Louise Heath and Alma Smith, as the Town Board of Brooksburg (Brooksburg), filed a complaint against the Henslers for abatement of obstruction of rights-of-way and damages, claiming that the Henslers' trailers obstructed two public streets that ran through the land. In support of its claim, Brooksburg relied on its plat maps from 1839, 1843 and 1878. The 1839 plat map depicted two streets running through the Henslers' property: Main Street, which runs north and south, and Water Street, which runs east and west. The 1843 plat map, which was redrawn in 1878, showed Main Street extending through the property to the Ohio River. Additionally, Brooksburg relied on a 1935 declaratory judgment entered against James N. Hamilton, one of the Henslers' predecessors in title, in which it was determined that Water Street ran east to west through Hamilton's property and was sixty-six feet wide its entire length. The judgment also indicated that Main Street extended from the north end of Brooksburg, through Hamilton's property, to the Ohio River and was sixty-six feet wide its entire length.

In response to Brooksburg's complaint, the Henslers asserted that public rights-of-way did not run through their property. In par-

---

1. Oral argument was held in Indianapolis on August 5, 1997.

ticular, the Henslers noted that the 1843/1878 plat of Brooksburg did not show the existence of Water Street. Additionally, they argued that the 1843/1878 plat map had been altered because the map did not depict Main Street extending to the Ohio River at the time they purchased the property in 1974. Finally, they argued that the 1935 declaratory judgment was not binding on them because it did not appear in the records of the Jefferson County Recorder's office.

Following a bench trial on August 28, 1996, the court entered judgment in favor of Brooksburg, concluding that both Main Street and Water Street ran through the Henslers' property. In support of its decision, the court found as follows: (1) the 1935 declaratory judgment prevented the Henslers from contesting the existence of the rights-of-way under the doctrine of res judicata; (2) the Henslers' were bound by the 1843/1878 plat map; and (3) the existence of Water and Main Streets had been established by continued public use for a period of more than twenty years. As a result, the trial court ordered the Henslers to remove their trailers and desist from obstructing the streets. The Henslers now appeal.

## DISCUSSION

### I. Standard of Review

██ Initially, we note our standard of review. In the present case, the trial court entered findings of fact and conclusions of law on its own motion. When a trial court enters findings on its own motion, the findings control only as to the issues they cover and the general judgment controls as to any other issue on which the court has not found. *Vanderburgh County Bd. of Comm'rs v. Rittenhouse*, 575 N.E.2d 663, 666 (Ind.Ct.App. 1991), *trans. denied.* We will reverse the trial court's findings only when they are clearly erroneous. Ind.Trial Rule 52(A). A trial court's findings of fact, conclusions of law, and judgment are clearly erroneous only if a review of the entire record leaves us with a definite and firm conviction that a mistake has been made. *Roark v. Roark*, 551 N.E.2d 865, 869 (Ind.Ct.App.1990). In reviewing the trial court's findings, we neither reweigh the evidence nor assess the credibility of witnesses. *Id.* Rather, we consider only the evidence and reasonable inferences drawn therefrom which support the judgment. *Id.*

### II. 1935 Declaratory Judgment

The Henslers first contend that the trial court erroneously concluded that the 1935 declaratory judgment was binding on them, preventing them from contesting the existence and width of Water and Main Streets. Specifically, the Henslers argue that they never received actual or constructive notice of the 1935 judgment because Brooksburg failed to file the judgment in the County Recorder's office. As a result, they contend that they are bona fide purchasers of the real estate and not bound by the declaratory judgment.

In response, Brooksburg contends that the Henslers are bound by the 1935 declaratory judgment under the doctrine of res judicata. In particular, Brooksburg argues that a judgment rendered against an owner of property is binding upon his or her subsequent grantees. Because the 1935 declaratory judgment was rendered against one of the Henslers' predecessors in title, Brooksburg contends that they are precluded from contesting the existence or width of Water and Main Streets.

In support of its contention, Brooksburg relies on our supreme court's decision in *Long v. Schowe*, 181 Ind. 13, 103 N.E. 785 (1914). In *Long*, the defendant placed a fence across a road which ran through his property. *Id.* In response, the plaintiffs, owners of neighboring land who needed the road to access their property, filed a complaint against the defendant to remove the fence, arguing that they had a right to use the road because of a partition judgment involving the defendant's predecessor in title which established the road. *Id.* On appeal, the supreme court held the defendant could not close the road because he was bound by the earlier judgment. In particular, the court noted that the defendant's predecessor in title had been a party to the partition litigation and that the deeds conveying the land to the parties had expressly noted the

existence of the right-of-way. *Id.* 103 N.E. at 787.

■ However, the facts in *Long* are distinguishable from the present case. Unlike *Long,* the Henslers' deed did not contain any reference to public rights-of-way running through their land. Record at 167–68. Furthermore, the defendant in *Long* did not contend that he did not have knowledge of the judgment entered against his predecessor in title; rather, he claimed the judgment was invalid because the commissioners who partitioned the property exceeded their authority. *Long,* 103 N.E. at 788. In contrast, the Henslers contend that they did not have actual or constructive notice of the 1935 declaratory judgment. As we explained in *Lamb v. Lamb,* 569 N.E.2d 992, 994 (Ind.Ct. App.1991), "every reasonable effort should be made to protect a purchaser of legal title for a valuable consideration without notice of a legal defect." Therefore, if the Henslers purchased the property for value without actual or constructive notice of the 1935 judgment, they are bona fide purchasers of the property and not bound by the judgment entered against their predecessor in title.

In determining whether the Henslers are bona fide purchasers, we initially note that it is undisputed that the Henslers purchased the property for a valuable consideration. Further, it is undisputed that the Henslers did not have actual notice of the 1935 judgment. Thus, we only need to ascertain whether the Henslers had constructive notice of the town's interest in the property.

■ Constructive notice is defined as notice "implied or imputed by law, usually on the basis that the information is part of a public record file...." BLACK'S LAW DICTIONARY 314 (6th ed. 1990). In Indiana, a " 'purchaser of real estate is presumed to have examined the records of such deeds as constitute the chain of title thereto under which he claims, and is charged with [constructive] notice ... of all facts recited in such records showing encumbrances, or the non-payment of purchase money.' " *Szakaly v. Smith,* 544 N.E.2d 490, 492 (Ind.1989) (quoting *Smith v. Lowry,* 113 Ind. 37, 44, 15 N.E. 17, 20 (1887)). Conversely, a purchaser is not charged with having constructive notice of the contents of documents outside his chain of title. *Residents of Green Springs Valley v. Town of Newburgh,* 168 Ind.App. 621, 344 N.E.2d 312, 316–17 (1976).

In the present case, the record reveals that the Henslers studied the 1843/1878 Brooksburg plat map and hired an attorney to perform a title search before purchasing the property in 1974. Neither of their searches revealed the 1935 declaratory judgment or any other impediments to their title. Further, William Pettitt, Brooksburg's land surveyor, testified that the declaratory judgment was not in the records of either the county recorder's or assessor's office. R. at 49. During oral argument, Brooksburg also conceded that the declaratory judgment was not recorded in the quiet title records, the miscellaneous records or, as a non-money judgment, in the judgment docket. As a result, the Henslers could not have discovered the 1935 declaratory judgment during their title search. In fact, they could only have discovered the judgment if they had conducted an exhaustive search of the court's general order book for the preceding thirty-nine years, which is an incredible burden to place on a purchaser of title. In contrast, Brooksburg could have easily preserved its interest in the property by recording the judgment. Given the Hensler's efforts in searching their title and Brooksburg's failure to record the judgment, we conclude that the Henslers did not have constructive notice of the 1935 declaratory judgment. As a result, they were bona fide purchasers of the property and, therefore, not bound by the 1935 judgment. Thus, the trial court erred in determining that the 1935 judgment definitively established the existence and width of Main and Water Streets.

### III. 1843/1878 Plat Map

The Henslers also contend that the trial court erred by concluding that the 1843/1878 plat map sufficiently established the existence and width of Main Street. During trial, Brooksburg introduced the 1843/1878 plat map to show that Main Street extended through the Henslers' property to the Ohio River at a width of sixty-six feet. In response, Robert Hensler testified that the plat

map must have been altered because it did not show Main Street extending through his property when he checked the map shortly before he purchased the property in 1974. At the conclusion of the trial, the court found that Robert's uncorroborated testimony was insufficient to establish that the plat map was altered, especially in light of the public's need to rely on public records concerning realty. According to the Henslers, the trial court erred in basing its determination on public policy grounds, rather than on Robert's testimony regarding the alterations.

■ Notwithstanding the Henslers' argument to the contrary, we cannot conclude that the trial court erred by determining that the 1843/1878 plat map established the width and location of Main Street. Here, it is undisputed that the plat map, which specifically indicated that it had been drawn in 1878, depicted Main Street running through the Henslers' property to the Ohio River at a width of sixty-six feet. Although Robert Hensler testified that the 1843/1878 plat map had not shown Main Street on his property at the time he examined the map and, therefore, must have been altered, the trial court was in the best position to weigh any conflicting evidence and assess the credibility of the witnesses. Considering that the 1843/1878 plat map clearly indicates the presence of Main Street and, absent additional evidence indicating that the map was altered, we cannot say that the trial court's finding that the map established the existence of Main Street is clearly erroneous.[2]

■ Nevertheless, the 1843/1878 plat map does not depict Water Street. Although Brooksburg also introduced into evidence its 1839 plat map, which showed Water Street extending from the Indian–Kentucky creek through the Henslers' property, we note that the trial court specifically found, and we agree, that the 1848/1873 plat map subsequently "disestablished" this street. R. at 9.

As a result, Brooksburg's plat maps cannot support the trial court's finding regarding the existence and width of Water Street.

## IV. Public Use

Finally, the Henslers contend that the trial court erroneously relied on the doctrine of public use to determine the width and location of Water Street.[3] Although the Henslers concede that Brooksburg presented evidence regarding the continued public use of Water Street, they contend that the evidence failed to support a finding regarding the western terminus of the street or that it was sixty-six feet wide.

■ Under Indiana law, the use of land as a street by the public for a period of twenty years constitutes a dedication of the street to the public without regard to the intention of the owners of the land. *City of Cannelton v. Lewis*, 123 Ind.App. 473, 111 N.E.2d 899, 901 (1953). As the Henslers note, however, "the width of the road established by [public] use is limited to that portion actually traveled...." *Board of Comm'rs of Monroe County v. Hatton*, 427 N.E.2d 696, 699 (Ind.Ct.App.1981). Here, the record reveals that Brooksburg residents had used Water and Main Streets from the early 1900s to the 1940s to access the Ohio River and Indian–Kentucky Creek in order to swim, boat and attend showboat performances and baptismal services. R. at 65–66, 84, 86, 89, 109. As the Henslers' note, however, nothing in the record establishes the width of Water Street at sixty-six feet. Although a long-time Brooksburg resident testified that people would drive their cars down Water Street to fish and access boats docked in the Indian–Kentucky Creek, she simply described the width of the road as "[e]nough for a truck." R. at 89. Further, the trial court specifically found that "the evidence introduced does not establish the width of Water Street, nor [its] western terminus."

---

**2.** Although the Henslers contend that the trial court's finding was based solely on public policy, we believe the trial court's determination was based on both the evidence and public policy. Having determined that the trial court's finding was supported by the evidence, we need not address his public policy justification.

**3.** The trial court also relied on public use in determining the location and width of Main Street. Having concluded that the 1843/1878 plat map sufficiently established the existence and size of Main Street, however, we need not consider the trial court's finding in this regard.

R. at 9. Thus, while the evidence in the record supports the trial court's finding that Water Street was established by public use, the evidence does not support the court's finding regarding the width of the street. Therefore, we must remand with instructions for the trial court to determine the width and western terminus of Water Street as established by the public's use.[4]

## CONCLUSION

In sum, we hold that the trial court properly relied on the 1843/1878 plat map to determine the existence and width of Main Street. We also conclude that the trial court properly determined that Water Street had been established due to continued public use of the road. However, the doctrine of public use does not support the trial court's finding regarding the width or western terminus of Water Street. Further, the 1935 judgment, which established the width and location of Water Street, was not binding on the Henslers because they were bona fide purchasers of the property. As a result, we must remand with instructions for the trial court to determine the width and western terminus of Water Street.

Judgment affirmed in part, reversed in part, and remanded.

NAJAM and STATON, JJ., concur.

---

4. During oral argument, Brooksburg also argued that the trial court's judgment did not have to be sustained on any one legal theory; rather, Brooksburg argued that the trial court's findings and conclusions, when read as a whole, were sufficient to support the judgment. For example, Brooksburg argued that although the evidence of public use did not definitively establish the width of Water Street, the width of the street could be established by reference to the 1935 declaratory judgment. However, we previously determined that the 1935 judgment was not binding on the Henslers because Brooksburg failed to properly record its interest. *See* Issue II. To nevertheless permit the trial court to rely on this judgment to establish the width of Water Street would essentially bind the Henslers by the previous judgment, contradicting that determination. As a result, we decline Brooksburg's invitation to adopt a hybrid legal theory, part of which we have rejected.