In the Matter of the ANNEXATION PRO-POSED BY ORDINANCE NO. X–01–93 Annexing Certain Territory Commonly Known as the North II Annexation Area to Fort Wayne and Including the Same in Councilmanic District No. 3.

No. 02A03–9411–CV–425.

Court of Appeals of Indiana.

July 28, 1995.

Transfer Denied Nov. 29, 1995.

ing the court erred in striking certain signatures and in allowing conclusion testimony. We affirm.

## FACTS

On March 9, 1993, the City of Fort Wayne enacted an ordinance annexing certain territory commonly known as the North II Annexation Area (North II). Record at 24. Landowners of the annexed property filed suit on May 21, 1993. On the city's motion, the trial court held a hearing concerning the validity of the remonstrance. Ind.Code § 36–4–3–11(a) (West Supp.1994) requires signatures of a majority of the owners of land in the annexed territory to maintain a remonstrance.[1] The parties agreed that landowners submitted 1608 good signatures of real estate owners by May 21, 1993. Record at 121–22. The trial court found, however, that 261 of the submitted signatures were precluded by waiver provisions contained in sewer agreements. Thus, the court concluded that landowners failed to submit the requisite 1,598 signatures and dismissed the remonstrance.[2] Record at 92.

## ISSUES

I. Whether the trial court erred in finding the remonstrance insufficient for lack of the necessary signatures.

A. Whether the city must present evidence that landowners connected to the sewage works before waivers of the right to remonstrate are considered valid.

B. Whether the court erred in admitting conclusion testimony from witness Brad Hall.

II. Whether the trial court erroneously dismissed landowners' complaint for declaratory judgment.

John M. Clifton, Jr., Barrett & McNagny, Fort Wayne, for appellant.

J. Timothy McCaulay, Helmke, Beams, Boyer & Wagner, Fort Wayne, for appellee.

## OPINION

GARRARD, Judge.

This case involves an Indiana city's annexation of land. Landowners of the annexed property sought to remonstrate against the annexation (Count I) and to seek a declaratory judgment that the annexation ordinance was void, illegal, invalid and of no force and effect (Count II). The trial court dismissed the remonstrance since it lacked the necessary signatures. Landowners appeal, claim-

---

1. I.C. § 36–4–3–11(a) allows two groups of people to remonstrate: (1) a majority of the owners of land in the annexed territory, or (2) the owners of more than seventy-five percent (75%) in assessed valuation of the land in the annexed territory. Appellants stipulated that they did not satisfy the requirements under I.C. § 36–4–3–11(a)(2).

2. The court concluded that landowners lacked 251 signatures to establish a sufficient remonstrance.

## DISCUSSION & DECISION

Issue One.

■■ Landowners contend the trial court erred in dismissing their remonstrance. When landowners challenge the propriety of annexation, the trial court is charged with first determining whether the remonstrance contains the necessary signatures. I.C. § 36–4–3–11(b); *Matter of City of Fort Wayne* (1978), Ind.App., 381 N.E.2d 1093, 1095 (upholding trial court's finding that remonstrance was insufficient due to numerous invalid signatures). Should the remonstrance be found insufficient, then the trial court is without subject matter jurisdiction over the action and cannot proceed further. *Id.*

■■ The trial court is not required to make special findings in an annexation proceeding. *Drake v. City of Fort Wayne* (1989), Ind.App., 543 N.E.2d 1145, 1147, *trans. denied, citing Abell v. City of Seymour* (1971), 150 Ind.App. 163, 275 N.E.2d 547. When the court voluntarily enters findings, as in the present case, the reviewing court considers the case as decided by a general judgment by partial findings. *Id.* The special findings control only as to the issues they cover. Any issue upon which the court has not found, however, is reviewed as a general judgment and may be affirmed on any theory supported by the evidence. *Plummer & Co., Inc. v. Cole* (1993), Ind.App., 613 N.E.2d 481, 483; *Fowler v. Campbell* (1993), Ind.App., 612 N.E.2d 596, 600; Ind.Trial Rule 52(D)(2).

A.

■ Landowners first challenge the court's determination that their remonstrance lacked the requisite signatures. Essentially, they contend that insufficient evidence supports the court's finding that sewer agreements resulted in waiver of the right to remonstrate.

■■ An owner of land may validly waive the right to remonstrate against future annexations if such a waiver is authorized by statute. *Rogers v. City of Evansville* (1982), Ind.App., 437 N.E.2d 1019, 1026, *citing Doan v. City of Fort Wayne* (1969), 253 Ind. 131, 252 N.E.2d 415, 418. Indiana has such a statute which, in relevant part, reads:

(b) The works board of a municipality may contract with owners of real property for the construction of sewage works within the municipality or within four (4) miles outside its corporate boundaries in order to provide service for the area in which the real property of owners is located.

(c) The contract must include, as part of the consideration running to the municipality, the release of the right of the parties to the contract and their successors in title to remonstrate against pending or future annexations by the municipality of the area served by the sewage works. Any person tapping into or connecting to the sewage works contracted for is considered to waive his rights to remonstrate against the annexation of the area served by the sewage works.

Ind.Code § 36–9–22–2 (West 1983). Before the waiver of remonstrance is binding, however, the landowner must have been a party to the contract, or the contract must have been entered and recorded within the chain of title of subsequent purchasers, or landowner must have had actual notice of the waiver provision. *Rogers*, 437 N.E.2d at 1026. Moreover, the waiver provision does not apply to any owner who is not a party to it "unless it has been recorded in the office of the recorder of the county in which the real property of the owner is located before the owner taps into or connects to the sewers and facilities." I.C. § 36–9–22–2(b).

In the present case, landowners claim the city submitted no evidence that the 261 owners whose signatures were stricken ever tapped into or connected with the sewage works. Appellants' brief at 16. Landowners apparently construe the statute as requiring that they or their predecessor in interest actually tap into the city's sewer system before they are bound by the waiver in their sewer agreement. We disagree with appellants' interpretation.[3]

---

3. Appellants do not argue that some landowners did not connect to the city's sewage works. Nor

do they direct us to such evidence in the record. Rather, they assert that the city must prove such

Landowners rely upon two parts of I.C. § 36–9–22–2. They contend the following language requires proof that they connected to the sewage works:

However, the contract does not apply to any owner of real property who is not a party to it unless it has been recorded in the office of the recorder of the county in which the real property of the owner is located *before the owner taps into or connects to the sewers and facilities.* I.C. § 36–9–22–2(b).

. . . . .

Any person *tapping into or connecting to the sewage works* contracted for is considered to waive his rights to remonstrate against the annexation of the area served by the sewage works. I.C. § 36–9–22–2(c).

(Emphasis added). The plain language of these sections does not require that landowners be connected to the city's sewer system before the sewer contracts are valid. Rather, I.C. § 36–9–22–2(b) depicts the legislature's intent that subsequent landowners receive notice of a prior sewer agreement before becoming bound by it. I.C. § 36–9–22–2(c) addresses the situation in which a person does connect to the sewer works, but remains silent as to any other possibilities.[4] Therefore, we will not import an additional requirement into the statute.

■ While not required by statute, the sewer agreement may state that all landowners who connect with the sewer works waive their right to remonstrate. *See Residents of Green Springs Valley Subdivision,* 344 N.E.2d at 314 (sewer contract provided for waiver of the right to remonstrate by subsequent owners of the land who tapped into the sewers); *Doan,* 253 Ind. at 134, 252 N.E.2d at 417 (contract provided that any owners or successors in title of the land who tapped

into the water main at issue waived the right to remonstrate against future annexation). Our review of the sewer agreement for Winsor Woods, Section III, however, reveals no such language. Record at 146. Instead, the contract at issue provided that the city would maintain the system and accept sewage therefrom. In consideration, and to induce the city to execute the contract, the signing landowner agreed to waive for himself and his successors in title the right to remonstrate against annexation of "any territory now or hereafter owned by him/her as described in Article 3 herein, or hereafter served by said sewer or any extension thereof." Record at 146, contract provision 7. The city has performed its obligations under the contract; thus, landowners are bound by their waivers. Without the 34 signatures from landowners in Winsor Woods, Section III, landowners submitted insufficient signatures to maintain a valid remonstrance.

We conclude that under the facts and circumstances of the present case, the city was not required to prove that landowners actually connected to the sewer works. Thus, the court's finding that landowners lacked sufficient signatures for a valid remonstrance was supported by evidence in the record. The court properly dismissed Count I.

B.

■■ Next, landowners contend that the trial court erred in admitting testimony from witness Brad Hall that a sewer contract was contained in the chain of title to each subdivision. Regardless of whether Mr. Hall is considered an expert witness or a lay witness,[5] landowners assert that he could not testify concerning a property's "chain of title" since that would involve a legal conclusion. Legal conclusions are reserved solely for the court's determination.

connections in order to establish valid waivers of the right to remonstrate.

4. The legislature's purpose in enacting this language remains unclear. Although it seems to suggest that a property owner who connects to the sewer system without knowledge of an existing sewer agreement waives the right to remonstrate, this court has rejected that interpretation. *Residents of Green Springs Valley Subdivision v. Town of Newburgh* (1976), Ind.App., 168 Ind. App. 621, 344 N.E.2d 312, 316 (interpreting a

predecessor statute to require recordation of the sewer contract so that subsequent landowners have constructive notice of the waiver of the right to remonstrate).

5. The record does not reveal that the trial court found Mr. Hall qualified to testify as an expert witness. Therefore, for purposes of this appeal we treat him as a lay witness rendering an opinion.

Landowners correctly refer to Indiana Rule of Evidence 704(b) in support of their argument that no witness may testify to opinions concerning legal conclusions. Indeed, this rule states:

Witnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions.

Ind.Evidence Rule 704(b). However, because we find that determination of a property's chain of title is not a legal conclusion, we hold that the trial court properly admitted Mr. Hall's testimony.

■ Our supreme court has discussed the concept of the "chain of title" to a tract of land. *Szakaly v. Smith* (1989), Ind., 544 N.E.2d 490. We find its language instructive:

County recorders must maintain a name index system for recording deeds and mortgages. Ind.Code § 36–2–11–12. Under this system all deeds are indexed alphabetically by grantor and by grantee, both with cross-references to the other party to the deed. The indices describe the tract and show the date of the deed's recording. The indices refer a prospective purchaser or encumbrancer to the recorded instruments.

*In a title search, the prospective purchaser or his abstractor assesses the marketability of title to a tract of land by determining the "chain of title."* Beginning with the person who received the grant of land from the United States, the purchaser or abstractor traces the name of the grantor until the conveyance of the tract in question. The particular grantor's name is not searched thereafter. As the process is repeated, the links in the chain of title are forged. (Emphasis added.) (Citations omitted.)

*Id.* at 491–92. Although somewhat tedious, the process of determining the chain of title for a particular tract of land is not complicated. If a specific encumbrance would be disclosed by a title search as described above, then the encumbrance is considered to be "within the chain of title." *See id.* at 492 (finding that purchaser Smith had constructive notice of easement when examination of grantor index for Smith's predecessor in title from the date she acquired her interest until she conveyed that interest to her grantee would have revealed that easement in Smith's chain of title.)

Additionally, our supreme court recognized that the process of determining a chain of title is performed routinely by prospective purchasers or abstractors. *Id.* at 491. As such, we do not find a property's chain of title to be a legal conclusion necessitating a court's determination. *Cf. Mitchell v. State* (1989), Ind., 535 N.E.2d 498, 503, *reh. denied,* (stating that whether evidence has probative value is a legal conclusion about the quality of a piece of evidence which has already been made by the trial court in admitting the evidence); *Harman v. C.E. & M., Inc.* (1986), Ind.App., 493 N.E.2d 1319, 1321, *reh. denied, trans. denied,* (finding determination of legal duty to be legal conclusion within the province of the court). The trial court properly admitted Mr. Hall's testimony as to the chain of title to each subdivision. Therefore, the court's finding that the sewer agreement pertaining to Winsor Woods, Section III was recorded within the remonstrators' chain of title is supported by the evidence. Record at 88.

Issue Two.

■ The parties have not referenced, nor does the record reveal either a motion to dismiss the complaint for declaratory judgment or a court order to that effect. The trial court's order dismissing landowners' remonstrance is silent as to the declaratory judgment action. Record at 84–92. The concluding lines of this order are limited to the remonstrance:

The Remonstrance is invalid for lack of the requisite number of signatures. The Remonstrance is ordered DISMISSED. Costs are assessed to the Petitioners.

Record at 92. Both parties, however, addressed in their briefs whether the court properly dismissed landowners' complaint for declaratory judgment. Thus, we remand to the trial court for clarification of the status of the declaratory judgment action; i.e., wheth-

er it remains pending or has been dismissed as well.[6]

## CONCLUSION

We affirm dismissal of landowners' remonstrance. We remand in part for clarification of the status of landowners' request for declaratory judgment.

HOFFMAN and STATON, JJ., concur.

**6.** We refer the trial court and parties to our recent decision in *Matter of the North I Annexation Area to City of Fort Wayne* (1995), Ind.App., 652 N.E.2d 878, in which we affirmed dismissal of landowners' declaratory judgment action. Although we recognized limited instances in which landowners could challenge annexation by declaratory judgment, we held that the adequacy of the city's fiscal plan could be examined only through remonstrance. *Id.* at 880. We note that in the present case, landowners's complaint alleged at least two bases for relief: (1) an inadequate plan by the City of Fort Wayne, and (2) a lack of contiguity in the annexed territory. Landowners' second allegation falls within one of those limited instances in which an action for declaratory judgment may be maintained.