The CITY OF KOKOMO, Indiana, acting by and through Greg GOODNIGHT, in his capacity as Mayor of the City of Kokomo, and the Kokomo Common Council, Appellants–Respondents.

v.

In the Matter of Ordinance # 6541, the West Side Annexation Ordinance, an Ordinance Seeking to Annex Certain Property to the City of Kokomo, Indiana.

Florence POGUE, Dennis Pogue, Joni Novak, Charles Loftis, Carolyn Loftis, and also, 68% of the Affected Landowners too numerous to be listed in the caption, Appellees–Remonstrators.

No. 34A02–1003–MI–356.

Court of Appeals of Indiana.

Dec. 16, 2010.

D. Lucetta Pope, Carl A. Greci, Baker & Daniels, LLP, South Bend, IN, Derek J. Sublette, Kokomo, IN, Tina M. Richards,

Baker & Daniels, Indianapolis, IN, Attorneys for Appellant, the City of Kokomo.

Corbin Kent King, King & Scott, LLP, Kokomo, IN, Attorney for Appellant, Kokomo Common Council.

Timothy E. Ochs, Ice Miller, LLP, Indianapolis, IN, Attorney for Amicus Curiae, Indiana Association of Cities and Towns and Indiana Municipal Lawyers Association.

Alan D. Wilson, Kokomo, IN, Attorney for Appellees.

## OPINION

BARNES, Judge.

### Case Summary

The City of Kokomo and the Kokomo Common Council (collectively "Kokomo") appeal the trial court's denial of its motion to dismiss a remonstrance petition filed by a group of landowners whose land Kokomo wishes to annex (collectively "the Remonstrators"). We reverse.

### Issue

The sole restated issue is whether the trial court properly rejected Kokomo's assertion that a substantial number of landowners who signed the remonstrance petition had waived their ability to challenge the annexation, thus bringing the total number of remonstrators below the statutory minimum required to pursue a remonstrance.

### Facts

On August 25, 2008, Kokomo passed an ordinance to annex 3742 parcels of land.[1] Persons objecting to the annexation obtained signatures from owners of 2543 parcels for a remonstrance petition challenging the annexation, which equals approximately sixty-eight percent of the parcels. The Remonstrators filed their remonstrance petition on November 19, 2008.

On December 18, 2008, Kokomo filed a motion to dismiss the Remonstrators' petition on the basis that they failed to obtain valid remonstrance signatures exceeding the statutorily-required sixty-five percent of parcel owners in the annexed territory. Specifically, Kokomo asserts that a substantial number of the 2543 signatories, or their predecessors in interest, had executed waivers of their right to remonstrate against any future annexation in conjunction with Kokomo's prior construction of sewer facilities extending to those parcels of land at a time when they lay outside Kokomo's boundaries.

Kokomo contends that, with respect to remonstrators for 375 parcels, predecessors in interest to those remonstrators executed sewer construction agreements with Kokomo containing explicit waivers of the right to remonstrate against any future annexation attempt by Kokomo, in exchange for expansion of the Kokomo sewer system into the territory. There were a total of four such sewer agreements, in 1991, 1993, and two in 1998. Those agreements were recorded in the Howard County Recorder's Office, and Kokomo contends the agreements are in the chain of title for each of the 375 parcels of land. Removal of these 375 signatures from the remonstrance petition would cause the number of signatures to fall below the sixty-five percent threshold.

Separate from these 375 parcels, Kokomo contends that sixty-four signatories to the remonstrance signed separate waivers of the right to remonstrate when they actually tapped into the Kokomo sewer

---

1. There have been some discrepancies regarding precisely how many parcels were annexed and how many non-duplicative signatures were on the remonstrance petition. We are utilizing the numbers found by the trial court and favored by the Remonstrators.

system. These waivers stated, in part, that the parcel owners "[i]n consideration of City services which have been extended by the City of Kokomo, do enter into this agreement with the City of Kokomo regarding waiving of remonstrance against annexation of the above described real estate." App. p. 355. Moreover, seventy-three remonstrance signatures for seventy-three parcels were provided by Country Development, Inc. ("Country"), which had also executed the 1991 sewer agreement. Therefore, with respect to these 137 signatures, whether the remonstrators had knowledge of the waiver of the right to remonstrate would not have been dependent upon a title search and discovery of one of the four sewer agreements. Subtraction of 137 signatures from the 2543 collected for the remonstrance petition also would cause the percentage of valid signatures to fall below sixty-five percent.

On February 9, 2010, the trial court denied Kokomo's motion to dismiss. After seeking and obtaining permission to pursue an interlocutory appeal, Kokomo now appeals.

## Analysis

At the outset, we address Kokomo's characterization of its motion to dismiss the Remonstrators' petition as a challenge to the trial court's subject matter jurisdiction. Kokomo asserts that the Remonstrators failed to meet the sixty-five percent threshold for a valid remonstrance petition, pursuant to Indiana Code Section 36–4–3–11(a)(1).[2] In the past, we referred to the failure of a remonstrance petition to contain the required number of signatures as depriving a trial court of subject matter jurisdiction. *See Sons v. City of Crown*

*Point*, 691 N.E.2d 1237, 1239 (Ind.Ct.App. 1998).

∎ In recent years, our supreme court has clarified the concept of subject matter jurisdiction, while discarding the phrase "jurisdiction over the case." *K.S. v. State*, 849 N.E.2d 538, 540 (Ind.2006). Specifically, "[s]ubject matter jurisdiction is the power to hear and determine cases of the general class to which any particular proceeding belongs." *Id.* In light of *K.S.*, we have rejected *Sons* and held, "A more accurate portrayal of Ind.Code § 36–4–3–11(a) is that it provides the procedural prerequisites to the trial court's exercise of subject matter jurisdiction over remonstrance proceedings." *In re Petition to Annex Approximately 7,806 Acres of Real Estate into City of Jeffersonville*, 891 N.E.2d 1157, 1161 (Ind.Ct.App.2008), *trans. denied.* In other words, there is no question here that the trial court had subject matter jurisdiction over remonstrance proceedings generally. The only question is whether this particular remonstrance proceeding was invalid due to an inadequate number of signatures. That does not directly impact the trial court's subject matter jurisdiction.

∎ However, it is true that for procedural purposes, challenges to a party's failure to meet the prerequisites for a remonstrance proceeding may be brought either under Indiana Trial Rule 12(B)(1) for lack of jurisdiction or 12(B)(6) for failure to state a claim, depending upon whether the claimed defect is apparent on the face of the complaint. *Id.* at 1160. The claimed defect here—arising because of alleged waivers of the right to remonstrate—is not apparent on the face of the complaint and

---

**2.** Indiana Code Section 36–4–3–11(a) requires a written remonstrance to be signed by either "(1) at least sixty-five percent (65%) of the owners of land in the annexed territory; or (2) the owners of more than seventy-five per-cent (75%) in assessed valuation of the land in the annexed territory." The Remonstrators do not claim that they meet the requirement of subsection (2) of Section 36–4–3–11(a).

so is more appropriately framed as a Rule 12(B)(1) issue.

■ The standard of review for a motion to dismiss under Rule 12(B)(1) is dependent upon what occurred in the trial court, i.e. (1) whether the trial court resolved disputed facts, and (2) if the trial court resolved disputed facts, whether it conducted an evidentiary hearing or ruled on a "paper record." *GKN Co. v. Magness,* 744 N.E.2d 397, 401 (Ind.2001). If the trial court resolves disputed facts after an evidentiary hearing, we will reverse its judgment only if it is clearly erroneous. *Id.* If, by contrast, the trial court does not resolve any disputed facts, or if it makes factual findings based entirely on a paper record, then we review the trial court's ruling de novo. *Id.* Here, to the extent the trial court resolved any evidentiary disputes, it did so entirely on the basis of a paper record. Thus, our review of the trial court's ruling is de novo.

We first note that the Remonstrators contend Kokomo failed to provide notice of the annexation as required by law. Indiana Code Section 36–4–3–2.2(b) provides in part that a municipality must send written notice of an annexation hearing "by certified mail at least sixty (60) days before the date of the hearing to each owner of real property, as shown on the county auditor's current tax list, whose real property is located within the territory proposed to be annexed." If the municipality complies with the notice statute, "the notice is not invalidated if the owner does not receive the notice." Ind.Code § 36–4–3–2.2(e).

■ The Remonstrators' challenge on this point largely is not subject to judicial review. Our supreme court has stated, "Annexation is essentially a legislative process, and courts should not micromanage it." *Bradley v. City of New Castle,* 764 N.E.2d 212, 214 (Ind.2002). Specifically,

annexation "is subject to judicial review only as provided by statute, and '[t]he larger object of the annexation statute is, as it always has been, to permit annexation of adjacent urban territory.'" *Id.* at 215 (quoting *Rogers v. Mun. City of Elkhart,* 688 N.E.2d 1238, 1242 (Ind.1997)). Remonstrations are controlled entirely by Indiana Code Sections 36–4–3–11 through 13. If the provisions of Section 36–4–3–13 are satisfied, a trial court must permit annexation. *Id.* at 217. If remonstrators are claiming technical, procedural wrongdoings by a municipality as part of the annexation process arising out of statutes other than Indiana Code Sections 36–4–3–11 through 13, the remonstrators must establish a violation of substantive due process or due course of law rights. *See id.* at 218. A mere failure to follow applicable rules or procedures to the letter does not, without more, amount to such a violation. *Id.*

■ Here, the Remonstrators' claim that Kokomo failed to comply with Section 36–4–3–2.2. That statute does not deal specifically with remonstrances. As such, the Remonstrators must do more than prove Kokomo failed to comply precisely with the statute; they must establish that Kokomo committed procedural wrongs "so severe that courts must act to protect [their] substantial rights." *See id.* at 217. The Remonstrators have not met this burden.

Section 36–4–3–2.2(b) requires notices of annexation to be sent by "certified mail." It is undisputed that Kokomo did not send the notices by certified mail. Instead, it used a method of mailing offered by the United States Postal Service ("USPS") called "signature confirmation." According to an affidavit submitted by Carey Stranahan, the Kokomo City Engineer, the use of the "signature confirmation" service

provided Kokomo with information regarding delivery of the notices exceeding that available with certified mail. The Remonstrators do not contradict this assertion in Stranahan's affidavit.

It seems apparent that the legislature requires notices of annexation to be sent by certified mail in order to provide additional assurance that such notices would be delivered to the intended recipients. Kokomo used a method of mail delivery that, according to Stranahan, approximates or even exceeds such assurance. That the USPS offers alternatives to certified mail delivery, and that the legislature failed to explicitly recognize such alternative methods, does not render Kokomo's use of an alternative method fatally flawed. The Remonstrators fail to explain how use of this method caused them any harm or was such an egregious wrong that it violated their substantial rights.

Moreover, the fact that up to 800 notices were returned as undelivered does not establish wrongdoing on Kokomo's part. Section 36–4–3–2.2(e) clearly states that a landowner's failure to receive actual notice of a proposed annexation is not fatal, so long as the statute's provisions regarding mailing were followed. The Remonstrators fail to demonstrate how the mailing of the notices by certified mail, as opposed to use of the "signature confirmation" service, would have caused those 800 notices to be actually delivered. The statute also contains no requirement that undelivered notices be remailed, as the Remonstrators contend should have been done. In sum, even if there was a technical failure by Kokomo to follow the provisions of the statute to the letter, the Remonstrators are not entitled to attack the annexation on that basis.

We now turn to the central question of whether the Remonstrators collected valid signatures from the owners of sixty-five percent of the parcels in the annexation territory. The starting point in our analysis is our supreme court's decision in *Doan v. City of Fort Wayne*, 253 Ind. 131, 252 N.E.2d 415 (1969). In that case, Fort Wayne was attempting to annex land and claimed that a number of landowners had previously waived their right to remonstrate in various instruments associated with the extension of water service outside of the city's boundaries. Our supreme court concluded these waivers were invalid, holding that "the right to remonstrate does not vest before territory is sought to be annexed." *Doan*, 253 Ind. at 136, 252 N.E.2d at 417. Thus, the landowners in *Doan* could not prospectively waive their right to remonstrate against future annexations, before such right had even arisen. *Id.* at 137, 252 N.E.2d at 418.

However, the *Doan* court expressly noted that legislation, then as now, permits the prospective waiver of remonstrance where the construction of sewage facilities is concerned. *Id.* at 139, 252 N.E.2d at 419. The court declined to extend the language of this statute to other areas, stating, "if the legislature meant to extend waiver of the right to other areas we must presume that it would have done so." *Id.* at 139, 252 N.E.2d at 419. To the extent the Remonstrators rely heavily upon *Doan* in their brief, it has virtually no direct application to this case because it falls under the express language of the sewer construction statute.

That statute states in part:

(b) The works board of a municipality may contract with owners of real property for the construction of sewage works within the municipality or within four (4) miles outside its corporate boundaries in order to provide service for the area in which the real property of the owners is located. The contract

must provide, for a period of not to exceed fifteen

(15) years, for the payment to the owners and their assigns by any owner of real property who:

   (1) did not contribute to the original cost of the sewage works; and

   (2) subsequently taps into, uses, or deposits sewage or storm waters in the sewage works or any lateral sewers connected to them;

of a fair pro rata share of the cost of the construction of the sewage works, subject to the rules of the board and notwithstanding any other law relating to the functions of local governmental entities. However, the contract does not apply to any owner of real property who is not a party to it unless it has been recorded in the office of the recorder of the county in which the real property of the owner is located before the owner taps into or connects to the sewers and facilities. The board may provide that the fair pro rata share of the cost of construction includes interest at a rate not exceeding the amount of interest allowed on judgments, and the interest shall be computed from the date the sewage works are approved until the date payment is made to the municipality.

(c) The contract must include, as part of the consideration running to the municipality, the release of the right of the parties to the contract and their successors in title to remonstrate against pending or future annexations by the municipality of the area served by the sewage works. Any person tapping into or connecting to the sewage works contracted for is considered to waive his rights to remonstrate against the annex-

ation of the area served by the sewage works.

I.C. § 36–9–22–2.

   ██ This court has held that, before a waiver of remonstrance is binding under this statute, the landowner must have been a party to the sewer contract, or the contract must have been entered and recorded within the chain of title of subsequent purchasers, or the landowner must have had actual notice of the waiver provision. *Matter of Annexation Proposed by Ordinance No. X–01–93*, 654 N.E.2d 284, 286 (Ind.Ct.App.1995), *trans. denied.* Mere recordation of a sewer contract containing a waiver provision is not sufficient. *Rogers v. City of Evansville*, 437 N.E.2d 1019, 1026 (Ind.Ct.App.1982). Rather, the contract containing the waiver provisions must be recorded within the chain of title of subsequent purchasers. *Id.* No constructive notice of the contents of a document outside the chain of title is imparted to a purchaser of real estate. *Id.* "[U]nless the contract for sewer services is recorded in such a manner as to impart constructive notice to subsequent landowners or to landowners not a party to the contract, the spirit of the statute and the reasons for requiring recordation of the contract are violated." *Id.*

Kokomo contends that, with respect to 375 signatures on the remonstrance petition, predecessors in interest to current landowners signed one of four sewer construction contracts in the 1990s, and that these contracts containing remonstrance waiver provisions are within the chain of title for the signatories' properties. The Remonstrators assert, and the trial court found, that although there is no dispute that the contracts were recorded, it is unclear whether they were within the chain of title for the properties.

We conclude it is unnecessary to resolve this dispute. We focus instead upon Koko-

mo's argument regarding a total of 137 signatures to the remonstrance petition provided either by parties who signed remonstrance waivers when tapping into the Kokomo sewer system, or who were signatories to one of the original sewer construction contracts.[3] Of those 137 signatures for 137 separate parcels of land, seventy-three were provided by Country, a developer. Country also executed the 1991 sewer construction agreement, which contained the following provision: "Part of the consideration for this Agreement is that the Owners [including Country], and all their successors and assigns in title, do release their right to remonstrate against any pending or future annexation to [Kokomo] of any portion of real estate owned by Owners which is subject to this Agreement." App. p. 436. Thus, Country clearly had actual notice of its waiver of the right to remonstrate against any future annexation attempt by Kokomo, as permitted (or indeed required) by the sewer construction statute.[4] Even if the 1991 sewer construction agreement was improperly recorded or recorded outside the chain of title, it still binds parties, like Country, who had actual notice of the agreement. See Rogers, 437 N.E.2d at 1028 (Ind.Ct. App.1982).

Next, we assess the validity of the waivers signed by the sixty-four individual remonstrators when they tapped into the Kokomo sewer system. Those waivers state that the individuals:

> In consideration of City services which have been extended by the City of Kokomo, do enter into this agreement with the City of Kokomo regarding waiving of remonstrance against annexation of the above described real estate.... It is understood and agreed that this agreement is being given in consideration of valuable City services which would not otherwise be available to the above described territory.

App. p. 303.[5] As a matter of practice, Kokomo obtains such waivers from individuals prior to accepting payment from them to tap into the sewer system. Kokomo has never provided any other utility services to property in the annexation area.

The Remonstrators do not deny that the sixty-four landowners signed these waivers. However, they contend that the waivers are ambiguous because they refer only to the provision of "City" services, not "sewer" services specifically, and pursuant to Doan waivers of remonstrance rights as to future annexations can only be valid in connection with the provision of sewer services. The Remonstrators also provided to the trial court copies of sewer connection agreements from other municipalities containing remonstrance waiver language that expressly referred to the provision of "sewer," not "city," services.

We disagree that the waivers' reference to "City" rather than "sewer" services impacts the validity of those waivers, even if we were to accept that they

---

3. We also do not address Kokomo's argument that once a landowner connects to a city's sewer system, they have automatically waived as a matter of law any right to contest a future annexation by that city, regardless of the existence of an express contractual waiver to that effect. We held to the contrary in *Residents of Green Springs Valley Subdivision v. Town of Newburgh*, 168 Ind.App. 621, 628–29, 344 N.E.2d 312, 316 (1976). We need not revisit *Newburgh* today.

4. It is irrelevant for waiver purposes whether Country, or any other signatories to a sewer construction agreement, ever actually tapped into the completed sewer system. *See Annexation Proposed by Ordinance No. X–01–93*, 654 N.E.2d at 287.

5. Some of the waivers contained slight variations in language not relevant to the issues before us.

were facially ambiguous. As in any contract interpretation case, our goal is to ascertain and give effect to the parties' intent. *See Brownsburg Mun. Bldg. Corp. v. R.L. Turner Corp.*, 933 N.E.2d 905, 907 (Ind.Ct.App.2010). Additionally, Indiana adheres to the rule that when interpreting an ambiguous written instrument, all relevant extrinsic evidence may be considered to resolve any ambiguity, regardless of its nature. *See University of Southern Indiana Foundation v. Baker*, 843 N.E.2d 528, 535 (Ind.2006).

Here, the uncontradicted evidence is that Kokomo procured the sixty-four individual waivers only in connection with the signatories' tapping into the Kokomo sewer system. Kokomo was not agreeing to provide any other type of utility service to the signatories, and in fact has never provided any other type of utility service to property in the annexation area. Obviously, pursuant to *Doan*, the landowners could not have waived their right to remonstrate if Kokomo was extending utility services to them other than sewer services. But that is not the case. Kokomo was statutorily entitled to demand that anyone connecting to its sewer system waive their right to remonstrate against future annexation. *See* I.C. § 36-9-22-2(c). The language of the waivers in that regard is clear and unambiguous; that is, the signatories were clearly advised and had actual knowledge of the fact that they were waiving their right to remonstrate in exchange for connecting to the Kokomo sewer system.

Thus, the trial court erred in finding these waivers to be ineffective. Invalidation of these sixty-four signatures on the remonstrance petition, coupled with invalidation of Country's seventy-three signatures, causes the percentage of valid landowner signatures in the annexation area to fall to 64.3%. This is below the statutorily-mandated minimum percentage of land-owner signatures needed to maintain a remonstrance. As such, the Remonstrators cannot proceed with their remonstrance against annexation by Kokomo.

### Conclusion

The trial court erred in concluding that the Remonstrators obtained the required minimum number of signatures needed to maintain their action against annexation by Kokomo. We reverse the denial of Kokomo's motion to dismiss.

Reversed.

FRIEDLANDER, J., and CRONE, J., concur.